NATIONWIDE MUTUAL INSURANCE COMPANY v. ANDREW CURRIE CHANTOS

No. 7

(Filed 3 October 1979)

1. Automobiles § 46— opinion testimony as to speed—admissibility

Defendant driver of an automobile could properly give his opinion as to the speed of his automobile just prior to the accident giving rise to this cause of action, since defendant's testimony revealed that he was a person of at least ordinary intelligence and experience and that he had a reasonable opportunity to judge the speed of the vehicle he was operating.

2. Automobiles § 53.1— loss of control of vehicle—crossing into lane of oncoming traffic—reason other than negligence—jury question

In an action to recover from defendant an amount paid to a third person for injuries sustained in an automobile accident where defendant stipulated that the car he was operating crossed over the median into the lane of traffic going in the opposite direction and collided with the third person's car, a jury question was nevertheless presented where defendant offered evidence that his car, which was travelling at 25 mph, skidded and went into a spin when he drove it onto a recently repaved bridge which was covered with rain water, and such evidence tended to show that defendant was in the lane of oncoming traffic from a cause other than his own negligence.

3. Appeal and Error §§ 45.1, 63— misapprehension of law by trial court—refusal to set verdict aside—error not discussed in brief—abandonment of assignment of error

Where the trial court would have set the verdict aside but for its misunderstanding that an earlier decision of the Supreme Court required that the matter be submitted to and determined by the jury, such error of the court in misconstruing the law would entitle plaintiff to have the cause remanded to the trial judge for consideration of its motion to set the verdict aside; however, because plaintiff did not raise the question in its brief, such assignment of error is deemed abandoned.

Justice BROCK did not participate in the consideration or decision of this case.

Justice HUSKINS dissenting.

ON certiorari to review judgment of *Bailey, J.*, entered at the 16 October 1978 Session of WAKE Superior Court.

This case has been tried four times and this marks its fourth appearance in the appellate division. The first trial resulted in a summary judgment in favor of defendant; that judgment was reversed by the Court of Appeals. *See* 21 N.C. App. 129, 203 S.E.

2d 421 (1974). The second trial also resulted in a summary judgment in favor of defendant and that judgment was reversed by the Court of Appeals. 25 N.C. App. 482, 214 S.E. 2d 438, *cert. denied,* 287 N.C. 465, 215 S.E. 2d 624 (1975).

Following the third trial, judgment was again entered for defendant. Plaintiff appealed from that judgment and this court allowed plaintiff's petition for discretionary review prior to determination by the Court of Appeals. In an opinion reported at 293 N.C. 431, 238 S.E. 2d 597 (1977), this court ordered a new trial and stated that the following issues should be submitted to the jury:

1. Was Charles Edward McDonald injured and damaged by the negligence of defendant?

2. Was plaintiff's settlement with McDonald made in good faith?

3. Was plaintiff's settlement with McDonald fair and reasonable?

4. What amount is plaintiff entitled to recover?

Said issues were submitted at the fourth trial. The jury answered the first issue "No" and, in view of that answer and instructions of the court, it did not answer the other issues. From judgment entered on the verdict in favor of defendant, plaintiff gave notice of appeal and we allowed plaintiff's petition for certiorari prior to determination of the case by the Court of Appeals.

*Ragsdale & Liggett, by George R. Ragsdale and Robert R. Gardner, for plaintiff-appellant.*

*Johnson, Patterson, Dilthey & Clay, by Ronald C. Dilthey, for defendant-appellee.*

BRITT, Justice.

Plaintiff instituted this action seeking reimbursement from defendant of the sum of $9,581.25 which plaintiff had paid to Charles E. McDonald (McDonald) in settlement for personal injuries and property damage sustained by McDonald in a collision with an automobile insured by a policy of insurance issued by plaintiff to Mr. and Mrs. David Earl Williams. Plaintiff's allegations are summarized as follows:

On 30 January 1971 Mrs. Williams allowed her minor son David to use her 1965 Mustang automobile which was insured by the policy referred to above. David, in turn, gave defendant, who was then 16 years old, permission to use the car. While in lawful possession of the Williams car, defendant negligently operated the same and caused a collision with an automobile operated by McDonald. Defendant's negligence was the proximate cause of serious personal injuries and substantial property damage suffered by McDonald. Plaintiff thereafter notified defendant that it was reserving all rights and defenses under the provisions of the Williams policy, but, nonetheless, under its reservation of rights and at the request of defendant, proceeded in good faith to settle the McDonald claim against defendant for the sum of $9,581.25. As a result of this settlement, plaintiff obtained a release which forever discharged defendant from any further liability to McDonald. Defendant was in lawful possession of the insured automobile. Therefore, plaintiff was required by the terms of G.S. 20-279.21(b) to extend coverage to defendant. Plaintiff is entitled to reimbursement from defendant pursuant to the provisions of G.S. 20-279.21(h) and the policy.

In his answer, the defendant admitted that while he was in lawful possession of the insured vehicle, he was involved in an accident with McDonald, and that McDonald suffered personal injuries and property damage in the collision. He further alleged that plaintiff was obligated to extend protection to him. He denied that the collision was caused by his negligence and that he was liable to plaintiff in any amount.

Plaintiff's evidence pertinent to this appeal tended to show: that the collision occurred during daylight hours on North Boulevard in the City of Raleigh at or near the bridge which carries boulevard traffic over Peace Street; that it was raining at the time; that North Boulevard at that point had three lanes for southbound traffic and three lanes for northbound traffic; that McDonald was traveling south on the inside lane; that defendant was traveling north; that the Mustang defendant was driving left the northbound lanes, went across a concrete median eight inches high into the southbound lanes and hit McDonald's car head on; and that the tires on the Mustang were slick.

Evidence favorable to defendant tended to show: Shortly before the collision, he drove onto the parking lot of a small shop-

ping center located on the east side of North Boulevard and a short distance south of Peace Street. It was raining. Before reentering the boulevard, defendant came to a complete stop at the north entrance of the shopping center parking lot. He then drove onto the boulevard, proceeding north. As he entered the bridge at about 25 m.p.h., the car went out of control into a spin, crossed the median into the southbound lane and collided with the McDonald car. A new coat of asphalt had been recently applied on the bridge. At the time defendant entered the bridge, it was covered with water. The speed limit at said point was 45 m.p.h.

Prior to trial defendant stipulated that on the date in question, while driving the Mustang north on Downtown Boulevard during a rainstorm, he left the northbound lane, crossed over into the southbound lanes and collided with McDonald's car which was traveling south.

For further elaboration on the evidence and the contentions of the parties, see the opinions of this court and the Court of Appeals cited above. While numerous questions were addressed in the prior appeals, the questions pertinent to this appeal are very limited and only they are discussed here.

In the first two assignments of error brought forward and discussed in its brief, plaintiff contends the trial court erred (1) in refusing to strike the opinion testimony of defendant relative to the speed of the automobile he was driving, and (2) in denying plaintiff's motion for directed verdict on the issues. We find no merit in these assignments, and, since they are closely related, we will discuss them together.

[1] On direct examination defendant testified that the bridge was some 75 to 100 yards north of the shopping center exit where he entered the boulevard from a completely stopped position; that he gradually increased his speed and moved over into the left northbound lane; that when he entered upon the bridge, he was traveling about 25 m.p.h.; and that he began to skid or spin immediately after going upon the bridge.

During a vigorous cross-examination, defendant steadfastly reaffirmed his statement that he was driving approximately 25 m.p.h. — 30 m.p.h. at the most. He further stated that while he was not sure whether he observed the speedometer, he based his

opinion as to speed on the cautiousness with which he entered the boulevard, the "climatic situation", the fact that he did not accelerate very fast, the short distance he had traveled, and his impression that "the terrain around me was not flashing by". He also stated that while he knew his friend David Williams had "burned the rubber" on the Mustang, he did not know that the tires were slick.

It is well settled in North Carolina that a person of ordinary intelligence and experience is competent to state his opinion as to the speed of a vehicle when he has had a reasonable opportunity to observe the vehicle and judge its speed. 2 Strong's N.C. Index 3d, Automobiles § 46 and cases cited therein. A review of defendant's testimony clearly discloses that he was a person of at least ordinary intelligence and experience and that he had a reasonable opportunity to judge the speed of the vehicle he was operating. That being true, the evidence was competent, and its credibility was for the jury to decide.

[2] With respect to its motion for directed verdict, plaintiff argues that defendant's stipulation that he drove across the median and collided with McDonald head on establishes that defendant was negligent *per se*. Plaintiff further argues that defendant's testimony that he was traveling only 25 m.p.h. was of no probative value in light of the physical evidence presented and should, therefore, be disregarded.

We agree with plaintiff's assertion that a violation of G.S. 20-146 (requiring a vehicle operator to drive on the right side of the highway, with certain exceptions) is negligence *per se. Reeves v. Hill*, 272 N.C. 352, 158 S.E. 2d 529 (1968); *Lassiter v. Williams*, 272 N.C. 473, 158 S.E. 2d 593 (1968). However, a defendant may escape liability by showing that he was on the wrong side of the road from a cause other than his own negligence. *Anderson v. Webb*, 267 N.C. 745, 148 S.E. 2d 846 (1966). *See also Ramsey v. Christie*, 19 N.C. App. 255, 198 S.E. 2d 470 (1973).

While defendant in the instant case stipulated that the car he was operating crossed over the median into the southbound lane and collided with McDonald, he also offered evidence tending to show that he was in the southbound lane from a cause other than his own negligence. Therefore, a jury question was presented and

the trial court properly denied plaintiff's motion for a directed verdict on the first issue. *Anderson v. Webb, supra.*

Having held that plaintiff was not entitled to a directed verdict on the first issue, we need not consider its contention that it was entitled to a directed verdict on the other issues because answers in favor of plaintiff on those issues were dependent upon an answer in its favor on the first issue.

Plaintiff states its third question as follows: "Did the trial court err in denying Nationwide's Motion for a Judgment Notwithstanding the Verdict on the first issue and for refusing to set the verdict aside?"

For plaintiff to be entitled to judgment notwithstanding the verdict (n.o.v.) on the first issue, it must first be determined that it was entitled to a directed verdict on that issue. G.S. 1A-1, Rule 50. Having already held that plaintiff was not entitled to a directed verdict, we also hold that it was not entitled to a judgment n.o.v.

Finally, we consider whether the trial court erred in refusing to set the verdict aside. After the jury returned its verdict, plaintiff moved for judgment n.o.v. on the first issue and for a new trial on the grounds that the verdict was against the greater weight of the evidence. After arguments of counsel, the trial judge stated that he would have granted plaintiff's motion for directed verdict except that the Supreme Court had mandated that the issues be submitted. He thereupon denied the motion for judgment n.o.v. While the court properly denied plaintiff's motion for a directed verdict, it stated the wrong reason for doing so, the proper reasons being hereinabove stated.

[3] Counsel then made arguments on the question of setting the verdict aside after which the trial judge stated that he agreed with plaintiff's counsel. His Honor further stated: "The verdict of the jury shocks me but I'm not going to set it aside. And the only reason on earth I'm not going to set it aside is that the Supreme Court stipulated that it would be a jury issue."

Obviously, the trial judge was referring to our former opinion which set out the issues warranted by the pleadings and the evidence. Nevertheless, His Honor grossly misconstrued our opin-

ion in concluding that he had been deprived of his authority granted by G.S. 1A-1, Rule 59, and particularly his authority under subsection (7), to set the verdict aside because of insufficiency of the evidence to justify the verdict.[1]

Upon proper presentation to this court, the error of the trial judge in misconstruing the law would entitle plaintiff to have the cause remanded to the trial judge for consideration of its motion to set the verdict aside because of "insufficiency of the evidence to justify the verdict" or, to use the term in common usage, for the reason that the verdict "was against the greater weight of the evidence". Where a ruling is based upon a misapprehension of the applicable law, the cause will be remanded in order that the matter may be considered in its true legal light. 1 Strong's N.C. Index 3d, Appeal and Error § 63.

However, while plaintiff raised the question regarding the failure of the trial court to grant its motion to set the verdict aside for the reason that it was against the greater weight of the evidence, it abandoned the assignment in its brief. At no place in the brief does plaintiff argue the assignment with respect to this question. "Questions raised by assignments of error in appeals from trial tribunals but not then presented and discussed in a party's brief, are deemed abandoned." Rule 28, Rules of Appellate Procedure, 287 N.C. 671, 741.

Furthermore, plaintiff concludes its brief with the following statements: "Nationwide has not asked for and does not seek a new trial. . . . Believing in its entitlement to the motions sought, Nationwide seeks only that relief here, and respectfully prays this Court to grant it a judgment n.o.v. on the first issue and directed verdicts on the second and third."

For the reasons stated, the verdict and judgment of the trial court will not be disturbed.

No error.

Justice BROCK did not participate in the consideration or decision of this case.

---

1. Rule 59 supercedes former G.S. 1-207 which authorized the trial judge to set aside a verdict and grant a new trial "upon exceptions, or for insufficient evidence, or for excessive damages". The term "against the greater weight of the evidence" came into usage as synonymous with "insufficiency of the evidence". *See* 2 McIntosh, N.C. Practice and Procedure 2d, § 1596(4) and cases cited therein.

Justice HUSKINS dissenting.

At the fourth trial of this case the jury answered the first issue "No," saying that Charles Edward McDonald was not injured and damaged by the negligence of defendant. Plaintiff, among other things, moved to set the verdict aside as against the greater weight of the evidence. That motion, as well as others, was denied by Judge Bailey, not on the merits but on the ground that the decision of this Court following the third trial, 293 N.C. 431, 238 S.E. 2d 597 (1977), required him to submit certain issues to the jury and to render judgment accordingly. Plaintiff then petitioned this Court for a writ of mandamus to require Judge Bailey to consider the various motions on their merits. We treated that document as a petition for certiorari and allowed it. Therefore, in actuality, the question before this Court on this appeal is whether Judge Bailey erred in refusing to consider on its merits the plaintiff's motion to set the verdict aside.

Judge Bailey's comments during the arguments for and against the various motions after verdict clearly indicate that he acted under the misapprehension that this Court's decision, reported in 293 N.C. 431, required him (1) to submit the issues set out in that opinion whether or not the evidence offered at the fourth trial justified submission, (2) to sign a judgment on the verdict, (3) to refuse to set the verdict aside even though it be against the greater weight of the evidence, and (4) to prohibit a peremptory instruction on any and all of the first three issues regardless of what the evidence was. For example, Judge Bailey stated to counsel: The jury's verdict "shocks my conscience. . . . I don't see how the jury reached the conclusion to save my life. . . . The verdict of the jury shocks me but I am not going to set it aside. And the only reason on earth I'm not going to set it aside is that the Supreme Court stipulated that it would be a jury issue." The record contains other expressions of like import.

Our decision did not repeal the Rules of Civil Procedure and it should not have impaired Judge Bailey's common sense. If the verdict was so far out of line as to "shock" Judge Bailey's conscience, and I think it must have been, then he should have set the verdict aside.

For the reasons stated I dissent from the majority opinion and vote to remand this case so that Judge Bailey may pass upon

the motion to set the verdict aside in the exercise of his *sound* discretion. Justice is not served when unseemly verdicts are sustained on technicalities. We have said many times that where a ruling or a judgment is based upon a misapprehension of applicable law, the cause will be remanded in order that the matter may be considered in its true legal light. *See Helms v. Rea,* 282 N.C. 610, 194 S.E. 2d 1 (1973); *Myers v. Myers,* 270 N.C. 263, 154 S.E. 2d 84 (1967); *Davis v. Davis,* 269 N.C. 120, 152 S.E. 2d 306 (1967).