CYNTHIA RAYFIELD TATE, AND CAROL T. TAYLOR, PLAINTIFFS v. ARTHUR L. CHRISTY, DEFENDANT

No. 9327SC331

(Filed 15 March 1994)

**Automobiles and Other Vehicles § 528 (NCI4th) — defendant crossing center line — road slippery from rain — submission of negligence issue to jury proper**

In an action to recover for injuries sustained in an automobile accident, the evidence did not show negligence *per se* by defendant but presented an issue of negligence for the jury where it tended to show that defendant crossed the center line and struck plaintiffs in their lane of travel, but there was also evidence that defendant was driving under the speed limit, was driving a car which was in good repair with good tire tread, and crossed the center line because of roads made slippery by rain rather than because of his own negligence. N.C.G.S. § 20-146.

**Am Jur 2d, Automobiles and Highway Traffic § 769.**

Judge ORR dissenting.

Appeal by plaintiffs from judgment entered 22 October 1992 and order entered 15 December 1992 by Judge Zoro N. Guice in Gaston County Superior Court. Heard in the Court of Appeals 14 January 1994.

TATE v. CHRISTY

[114 N.C. App. 45 (1994)]

*James, McElroy & Diehl, P.A., by G. Russell Kornegay, III, and Richard B. Fennell, for plaintiff appellant, Cynthia Rayfield Tate; and Tim L. Harris & Associates, by Jerry N. Ragan, for plaintiff appellant, Carol T. Taylor.*

*Stott, Hollowell, Palmer & Windham, by Martha Raymond Holmes, for defendant appellee.*

COZORT, Judge.

Plaintiffs appeal the trial court's judgment reflecting a jury verdict finding that plaintiffs' injuries resulting from an automobile collision were not caused by defendant's negligence. Plaintiffs additionally appeal the denial of their motions for judgment notwithstanding the verdict and for a new trial. We find no error.

Plaintiffs filed this cause of action on 1 July 1991 to recover damages for injuries they received when the automobile in which they were riding was struck by defendant's vehicle. The evidence presented at trial tends to show that, on 11 October 1990, at approximately 1:15 p.m., Cynthia Tate, and her mother, Carol Taylor, were driving south on Helton Road in Gaston County, North Carolina. Defendant was also driving on Helton Road, heading in a northerly direction. As plaintiffs and defendant approached a curve in opposite directions, Ms. Tate noticed that defendant was across the yellow line and coming toward her in her lane of travel. Ms. Taylor also testified at trial that she observed defendant's automobile over the double yellow line. Ms. Tate attempted to steer her car out of the way, but she was unable to avoid a collision. Defendant's vehicle struck Tate's car, damaging both the front and side of the passenger's side, and the front of the driver's side of the automobile.

Trooper Kersey, the investigating officer at the scene, measured skid marks from defendant's vehicle which began twenty-six feet from the point of impact. The skid marks crossed the center line prior to the point of impact. Trooper Kersey noted the road was in good condition, but that it had been raining on the day of the accident. Defendant told Trooper Kersey that "slick roads" was a cause of the accident, and that he had been travelling below the posted speed limit of 55 miles per hour.

At the close of the evidence, both plaintiffs and defendant moved for a directed verdict. The trial court denied defendant's

TATE v. CHRISTY

[114 N.C. App. 45 (1994)]

motion and reserved ruling on plaintiffs' motion. The issue of whether plaintiffs were injured by defendant's negligence was sent to the jury. The jury returned a verdict finding that plaintiffs were not injured by the defendant's negligence. The trial court thereupon entered judgment based on the verdict and denied all post trial motions.

Plaintiffs argue the trial court should have directed a verdict in their favor as to defendant's negligence, or granted their motion for a judgment notwithstanding the verdict (JNOV), since defendant could not demonstrate that his violation of N.C. Gen. Stat. § 20-146, requiring a driver to drive on the right side of the road, was not negligence *per se*. Defendant contends the plaintiffs' own evidence was sufficient for a jury to find that he was not liable, because Trooper Kersey presented evidence tending to show the defendant was on the opposite side of the road from a cause other than his own negligence. We agree with defendant and find no error.

A directed verdict motion pursuant to N.C.R. Civ. P. 50 tests whether the evidence is sufficient to submit the case to the jury in support of a verdict for the nonmoving party. *Dunbar v. City of Lumberton*, 105 N.C. App. 701, 703, 414 S.E.2d 387, 388 (1992). A motion for judgment notwithstanding the verdict (JNOV) under Rule 50(b) of the North Carolina Rules of Civil Procedure is essentially a renewal of a motion for a directed verdict. *Bryant v. Nationwide Mut. Fire Ins. Co.*, 313 N.C. 362, 368-69, 329 S.E.2d 333, 337 (1985). The test governing the sufficiency of the evidence on a motion for JNOV is the same as the test used on motions for directed verdicts. *Northern Nat'l Life Ins. Co. v. Lacy J. Miller Mach. Co.*, 311 N.C. 62, 69, 316 S.E.2d 256, 261 (1984). Therefore, if a directed verdict should have been granted, JNOV should be granted. *Bryant*, 313 N.C. at 369, 329 S.E.2d at 337. As stated previously, we must determine whether the evidence, when viewed in the light most favorable to the nonmovant, giving the nonmovant the benefit of every reasonable inference, was sufficient to go to the jury. *Id.* at 369, 329 S.E.2d at 337-38.

Here, the evidence presented at trial did not establish conclusively that defendant was negligent as a matter of law. It is undisputed the defendant violated N.C. Gen. Stat. § 20-146 (1993), which provides that "[u]pon all [highways] of sufficient width a vehicle shall be driven upon the right half of the highway . . . ." Where a plaintiff puts on evidence tending to show the

collision occurred when defendant was driving left of center of the highway, the burden shifts to defendant to produce evidence that he was on the wrong side of the road from a cause other than his own negligence. Otherwise, defendant's violation of N.C. Gen. Stat. § 20-146 amounts to negligence *per se. See Nationwide Mut. Ins. Co. v. Chantos*, 298 N.C. 246, 250, 258 S.E.2d 334, 337 (1979). In *Chantos*, the North Carolina Supreme Court stated:

> While defendant in the instant case stipulated that the car he was operating crossed over the median into the southbound lane and collided with [plaintiff], he also offered evidence tending to show that he was in the southbound lane from a cause other than his own negligence. Therefore, a jury question was presented and the trial court properly denied plaintiff's motion for a directed verdict on the first issue.

*Id.* at 250-51, 258 S.E.2d at 337.

In this case, defendant presented evidence tending to show he crossed into plaintiffs' lane of travel from a cause other than his own negligence. Trooper Kersey testified that defendant was travelling under the speed limit and was operating a vehicle in good condition having tires with good tread. The evidence also demonstrated the road was slippery due to rainy weather. Thus, there was evidence before the court tending to show that defendant crossed the double yellow line due to a cause other than his own negligence. Accordingly, the issue of whether a cause other than defendant's negligence forced him into the other lane was a proper issue for the jury's determination. *See Anderson v. Webb*, 267 N.C. 745, 148 S.E.2d 846 (1966). Because reasonable minds could have differed on the question of what caused defendant to move into the other lane, the jury was in the best position to reconcile the evidence and to make such a determination. Accordingly, we find the trial court did not err in denying plaintiffs' motion for a directed verdict and for JNOV.

Plaintiffs further contend the trial court erred in failing to grant their motion for a new trial. Our standard of reviewing a motion for a new trial pursuant to N.C.R. Civ. P. 59 is an abuse of discretion standard. *Bryant*, 313 N.C. at 380-81, 329 S.E.2d at 343-44. We find no manifest abuse of discretion by the trial court in the present case; plaintiffs' assignment of error is thus overruled.

◊

## TATE v. CHRISTY

[114 N.C. App. 45 (1994)]

Finally, plaintiffs argue the trial court erred in granting defendant's motion *in limine* which excluded evidence of a citation received by defendant following the accident. We have reviewed the record and find no evidence as to any citation received by defendant or disposition of a traffic citation. This assignment of error is overruled.

No error.

Judge GREENE concurs.

Judge ORR dissents.

Judge ORR dissenting.

I agree with the majority that when plaintiffs put on evidence tending to show that the collision occurred while defendant was driving left of center of the highway, the burden shifted to defendant to produce evidence that he was on the wrong side of the road from a cause other than his own negligence. I respectfully dissent, however, from the majority's decision that defendant in the present case succeeded in carrying his burden.

Defendant argues, and the majority agrees, that plaintiffs' evidence that the road was slick, that defendant's tires were not slick, that defendant's car was in good condition, and that defendant was traveling under the speed limit was sufficient to tend to show that defendant "was on the wrong side of the road from a cause other than his own negligence." I disagree.

Our laws require that a motorist "operate his vehicle with due caution and circumspection, with due regard for the rights and safety of others, and at such speed and in such manner as will not endanger or be likely to endanger the lives or property of others." *Williams v. Henderson*, 230 N.C. 707, 708, 55 S.E.2d 462, 463 (1949). Inclement weather does not relieve a motorist of the duty to exercise due care, for under this duty, motorists are required to operate their vehicles in a reasonably prudent manner for the conditions then existing. *See, e.g., Kolman v. Silbert*, 219 N.C. 134, 125 S.E.2d 915 (1941); *Hoke v. Atlantic Greyhound Corp.*, 226 N.C. 692, 40 S.E.2d 345 (1946).

[W]hen the plaintiff relies on the violation of a motor vehicle traffic regulation as the basis of his action . . ., unless otherwise

provided in the statute, the common law rule of ordinary care does not apply. The statute prescribes the standard, and the standard fixed by the Legislature is absolute. . . . Proof of the breach of the statute is proof of negligence. In essence, that is the meaning of *per se.*

The violator is liable if injury or damage proximately results, irrespective of how careful or prudent he has been in other respects.

*Aldridge v. Hasty*, 240 N.C. 353, 360, 82 S.E.2d 331, 338 (1954).

The majority relies upon *Nationwide Mut. Ins. Co. v. Chantos*, 298 N.C. 246, 258 S.E.2d 334 (1979) in support of their conclusion that defendant carried his burden of producing evidence that he was on the wrong side of the road from a cause other than his own negligence. *Chantos* is not, however, controlling.

In *Chantos*, the plaintiff's evidence tended to show that Charles McDonald was traveling south on North Boulevard in Raleigh, that defendant was driving north on this same road, that defendant's car left the northbound lane, went across a concrete median eight inches high into the southbound lane and hit McDonald's car head on at or near a bridge, that at the time of the collision it was raining, and that defendant's tires were slick. Evidence favorable to defendant tended to show that shortly before the collision, defendant drove onto the parking lot of a shopping center and, before reentering the boulevard, he came to a complete stop at the north entrance of the parking lot. Defendant then drove onto the boulevard and proceeded north. At the time defendant entered the bridge, the bridge was covered with water and a new coat of asphalt had been recently applied.

On direct examination, defendant testified that the bridge was 75 to 100 yards north of the shopping center exit where he entered the boulevard from a completely stopped position. Further, defendant testified that he gradually increased his speed and moved over into the left northbound lane, that when he entered upon the bridge, he was traveling about 25 m.p.h., the speed limit being 45 m.p.h., and that he began to skid or spin immediately after going upon the bridge. During cross-examination,

defendant steadfastly reaffirmed his statement that he was driving approximately 25 m.p.h.—30 m.p.h. at the most. He further stated that while he was not sure whether he observed

the speedometer, he based his opinion as to speed on the cautiousness with which he entered the boulevard, the "climatic situation", the fact that he did not accelerate very fast, the short distance he had traveled, and his impression that "the terrain around me was not flashing by". He also stated that while he knew his friend David Williams had "burned the rubber" on the [car defendant was driving], he did not know that the tires were slick.

*Id.* at 249-50, 258 S.E.2d at 336. Based on this evidence, our Supreme Court concluded, "[w]hile defendant . . . stipulated that the car he was operating crossed over the median into the southbound lane and collided with McDonald, he also offered evidence tending to show that he was in the southbound lane from a cause other than his own negligence." *Id.* at 250, 258 S.E.2d at 337. Based on this conclusion, the Court held that a jury question was presented on the issue of defendant's negligence.

In the present case, unlike in *Chantos*, the defendant did not testify or present any direct evidence on liability other than the cross-examination of Trooper Kersey, in which the following testimony was elicited:

[Counsel for defendant:] And based on your conversation with [defendant] he told you that he was traveling north and going at a speed greatly less than the speed limit; is that right?

[Trooper Kersey:] Yes, ma'am. He told me [he] was going below the posted speed limit; that's correct.

[Counsel for defendant:] And the posted speed limit was fifty-five miles an hour?

[Trooper Kersey:] Yes, ma'am.

[Counsel for defendant:] Do you have an indication on your report as to whether there were any defects in the vehicles?

[Trooper Kersey:] Yes, ma'am.

[Counsel for defendant:] And you have Number Eight written down for [defendant's] vehicle . . . ?

[Trooper Kersey:] Yes, ma'am.

[Counsel for defendant:] And that means there were no vehicle defects?

[Trooper Kersey:] That I detected that day, yes, ma'am, that's correct.

. . .

[Counsel for defendant:] There was nothing wrong with [defendant's] tires that you saw?

[Trooper Kersey:] That's correct. Everything that I observed about his vehicle as far as the laws that govern this state they were in accordance to those laws.

[Counsel for defendant:] And based on what [defendant] told you was it your understanding that slick roads was one of the causes of the accident, wasn't it?

[Trooper Kersey:] That's correct, yes, ma'am. As a matter of fact that's what he told me and that was my opinion.

Without more substantive evidence as to why or how the "slick road" caused the accident, I find no support in our law to relieve defendant of his responsibility of driving on the right side of the road, nor to allow a jury to speculate as to what happened.

Thus, absent evidence of a sudden emergency or other circumstances that caused defendant to drive left of the center line, I would conclude that defendant's failure to keep his vehicle in the proper lane of travel constituted negligence *per se*, and hold that the trial court erred in denying plaintiffs' motion for a directed verdict and judgment notwithstanding the verdict as to defendant's negligence. Accordingly, I would reverse the judgment of the trial court and remand the case for entry of a judgment of negligence against defendant and a new trial on the issue of damages.